[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PREJUDGMENT REMEDY 
The court has reviewed the papers, has heard the testimony of the witnesses, has reviewed the exhibits and reviewed the briefs of the parties. The court finds after due hearing, that there is probable cause CT Page 690 that a judgment in the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in this matter in favor of the applicant and the application is granted. It is ordered that a prejudgment remedy in the sum of $201,380.50 is granted, and it is further ordered that the plaintiff may attach to the value of $201,380.50 the following accounts of the defendant being Account No. 15-055266 at Putnam Trust Company and Account No. 45361731 at Citibank.
The court heard from the parties; both Mr. Brown, the plaintiff and Mr. Bagley, the defendant testified. Although they told conflicting stories concerning the agreement of compensation, essentially the stories are not as diametrically opposed as they might appear at first blush. It is a question of perception as to what the agreement was, and it is clear that neither one of the parties thought it necessary to have a writing.
The court finds the testimony of Sean Brown to be the most credible. The court finds that the evidence has established that Mr. Brown and Mr. Bagley had two previous dealings on commission sharing. In each dealing the entire commission was split equally. Mr. Brown testified that on the last matter it involved the premises known as 1 East Weaver Street, Greenwich, Connecticut. It is clear that by early 1999, Blyth (the client) had outgrown its space at 100 Field Point Road. Blyth's chairman approached Mr. Brown at their Annual Shareholders Meeting and asked him to assist Blyth in addressing its need for additional space. Mr. Brown once again contacted Mr. Bagley. Mr. Bagley's company agreed to represent Blyth if he could arrange an exclusive agreement. Mr. Bagley affirmed the agreement to pay Mr. Brown's company 50% of all revenues the defendant company earned as commissions in representing Blyth. Thereafter, Brown persuaded Blyth to enter into an exclusive relationship with Sound Commercial Real Estate Group, Mr. Bagley's company (SCRG), (see Exhibit W). In or about June of 2000, Blyth entered into a commercial lease agreement in respect of office space located at 1 East Weaver Street, Greenwich, Connecticut. (1 East Weaver Street Lease). SCRG earned a commission of $402,761.00 with respect to the East Weaver Street Lease to be paid in two installments as of July 2, 2000 and October 15, 2000. The court finds that pursuant to the co-brokerage agreement between SSB (Mr. Brown's company and SCRG, (Mr. Bagleys company), $201,380.50 is due to SSB from SCRG in respect to the East Weaver Street Lease.
The parties agreed that for 15 years they had had a personal relationship with their companies. They both agreed that there were two previous incidents where they had entered into oral co-brokerage agreements and had divided the proceeds 50% to each. Mr. Bagley disagreed as to why the second arrangement was divided 50-50. Mr. Brown said it was done because that was the agreement. Mr. Bagley said it was done because CT Page 691 it represented a fair division of work. Based on the two prior divisions, and the fact that Mr. Bagley testified that it was customary to enter into an agreement concerning the fee prior to obtaining the lease or renewal, this would make Mr. Brown's testimony credible.
In an attempt to down-play the roll of Mr. Brown, Mr. Bagley testified under oath that documents that were introduced into evidence were not even sent to Mr. Brown. The thrust of the argument being that since he wasn't doing anything, there was no reason to keep him posted. Mr. Bagley testified under oath that Exhibits E, F, H, I, J, K, L, M, N, P, R, S and V were not sent to Mr. Brown. Mr. Brown was able to establish to this court's satisfaction that he had in fact, received Exhibits F, G, I, K, P, R and S. This assisted the court in determining the issue of credibility between the parties.
Although the Statute of Frauds was raised by the defendant, he abandons it in his brief and the plaintiff and he agree that it is not applicable to SSB's claims.
The Statute of Limitations defense was raised by the defendant. The court finds that the defense is without merit. The contract at issue was formed by the parties in June 1999 on the day of the Blyth shareholders meeting. Sound Commercial breached the agreement in the Spring of 2000, when it earned a commission but refused to pay SSB the portion due to it. In Connecticut, the Statute of Limitations for claims to enforce oral agreements is three years. See Connecticut General Statutes § 52-581a.
At the hearing, this court heard testimony regarding the parties prior relationships as is set forth in this decision. That evidence provided a background about how the parties interacted and assisted the court in determining credibility. That evidence also provided context for the June 1999 agreement. The plaintiff does not assert claims under those prior contracts.
Accordingly, for all the reasons stated, the order entered earlier herein is entered.
KARAZIN, J.